# UNITED STATES DISTRICT COURT RECEIVED
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION 2006 MAY -5 P 3: 56

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

JESSIE TOMPKINS Sr.            *

     Plaintiff,            *

VS                             * CASE NO. 2:06CV325.WKW
                                Jury Trial Demanded

JUDGE JOHN JONES,              *
JUDGE PATRICIA WARNER,
JESSICA LARRY,                 *
AUDRA BEASLEY,
CAPT. CHRISTOPHER LOWERY,      *
CITY OF MONTGOMERY,
MONTGOMERY COUNTY YOUTH        *
FACILITY, BETTY BARKER AND
JULIANNA TAYLOR.               *
     Defendants.

---

# COMPLAINT
(Amended)
## JURISDICTION

1. This action arises under 42 U.S.C. 1981, 1983,1985(3),1986; 28 U.S.C 1331,1343, 1361,1442(a); 42 U.S.C. 2000d-(1)(7), 20 U.S.C.1681 and the Constitution of the United States, Particularly the rights guaranteed to the plaintiff under the due process clause of the, thirteenth (13th) Fourteenth (14th) amendment and rights guaranteed to the plaintiff under the first (1st), fourth (4th), Fifth (5th), Sixth (6th ) to the United States Constitution.

2. The matter in controversy is over One Million Dollars (1,000,000.00), exclusive of interest and costs.

PARTIES

3. **JESSIE TOMPKINS**, is a black male whom is a non-custodial parent and is over the age of 19 and all times mention herein a resident of Montgomery County, Alabama. Mr. Tompkins is employed with Montgomery County Public Schools, assigned to the Montgomery County Youth Facility Education Department, a Division of the Montgomery County Family Court, Juvenile Division.

4. JUDGE JOHN JONES, is over the age of 19, is being sued individually and in his official capacity as Probate Judge of Dallas County Alabama. As Chief Probate Judge for Dallas County. Judge Jones serves as Chairman for the Dallas County Commissioner. In that, he receives and administers State and Federal funded programs for the State of Alabama and Dallas County, Alabama. Judge Jones is a State Judge.

5. JUDGE PATRICIA WARNER, Is being sued individually and In her official capacity as a State of Alabama Circuit Family Court Judge for the 15th Judicial Circuit Montgomery, Alabama. Judge Warner's duties with the Montgomery County Youth Facility. Include the delegation, appointment and administration of Youth Service for Montgomery and surrounding counties. Many of these services and programs are federal funded. Additionally, she is being sued for injunctive relief. She is a resident of Montgomery County, Alabama. Judge Warner is a State Judge.

6. SPECIALIST JESSICA LARRY, is being sued individually and in her official capacity and rank of Specialist as a Non-Commission Officer with the United States Army, she is over the age of 19 and all times mention herein a resident of Montgomery County, Alabama.

7. AUDRA BEASLEY, Is being sued individually, is over the age of 19 and is a resident of Montgomery County, Alabama.

8. CAPTAIN CHRISTOPHER LOWER, Is over the age of 19, is being sued Individually and in his official as Commanding Officer, of U.S. Army Recruiting Company of Montgomery. He is responsible for administering the rules and regulation of the U.S. Army recruiting Company of Montgomery. The U.S. Army Recruiting Company of Montgomery is a entity of the United States Government (Army) and

subject to this court jurisdiction. He is a resident of Montgomery County, Alabama.

9. JULIANA YAYLOR, WAS APPOINTED as Guardian Ad Litem for Mr. Tompkins' son. Ms. Taylor's appointment vested her with state authority under the laws of Alabama, "Color of law". 42 U.S.C. 1983 and 1985(3).

10. MS. BETTY BARKER, is a non-relative in this matter and was approved by the State of Alabama as legal guardian over Mr. Tompkins' Minor son.

11. THE MONTGOMERY COUNTY YOUTH FACILITY, is a state operated and funded program, (herein referred to as Youth Facility), The Youth Facility receives state and federal funds and grants. 42 U.S.C. 2000(d)(1)(7) and 20 U.S.C.1681 of the 1964 Civil Rights Act.

12. THE CITY OF MONTGOMERY, is a local Municipal Corporation created under the laws of Alabama, (Herein referred to as "The City"), The City is a recipient of federal funds and grants. 42 U.S.C. section 1983. 42 U.S.C. 2000(d)(1)(7) and 20 U.S.C.1681 of the 1964 Civil Rights Act.

13. This action is an action for damages to redress the deprivation under color of state law, statures, regulations, customs or usage of rights, privileges and immunities protected and secured by the Constitution of the United States ,and acts of Congress providing for equal rights of citizen and all persons within the jurisdiction of the United States.

14. This is also a suit in equity under color of law, as cited in the above statures seeking injunctive relief from irreparable harm and harm already sustained and about to be sustained as a result of the pending and unlawful acts and illegal acts of the defendants.

**COUNT I**

15. On April 13th 2005, while acting as a co-defendant, Probate Judge John Jones allowed a criminal act of forgery to be committed in his official. In that, the Dallas County Probate Seal was affixed to an a official document and custody agreement, allegedly signed between Jessie Tompkins and Jessica Larry, The signature of the plaintiff was forged while Judge Jones was acting under the color of law, to assist the U.S. Army in meeting its recruiting quota's. This instrument was executed without the U.S. Army or Specialist Jessica Larry filing a petition with the Dallas County Probate Court and nor has there been a case pending before the Dallas County Probate Court.

16. **Attachment A**, was forged with the intent of depriving the plaintiff of his parental right. Mr. Tompkins and Ms. Larry are residents of Montgomery County Alabama.

17. After seeking advise from the U.S. Army, Capt. Christopher Lowery, Ms. Larry was re-enlisted in the Army. On June 20th, 2005, Ms. Larry, falsely filed a petition with the family court in Montgomery, Alabama, alleging abuse and neglect in an attempt to get custody. Exhibit A, was introduced as being a valid agreement between the parties. (**See Exh. B**), It is commonly understood that the Army would used Judge Jones' official office to place the Dallas County Probate seal on forged custody agreements, to assist the Army in recruiting and meeting its monthly quota's in violation of Alabama Code section 13A-9-3 (A)(3)(B) and the plaintiff's rights to due process of the law guaranteed under the 14th Amendment to the U.S. constitution. Mr. Tompkins Petition for Child support was placed on administrative docket, therefore, denying him child support for his minor son from Ms.Larry.

18. On October 11,2005 a final hearing was scheduled in JU-05-564-01 and JU-05-564-02, Counsel for Ms. Larry advised the court that Ms. Larry was deployed and ask that the hearing be continued until Ms. Larry's 13 month deployment is over. At such time Ms. Larry was not deployed, and this delay tactic was used to prevent DHR home inspection, Ms. Larry was living in military Barracks and did not have private living quarters.

19. Ms. Larry, abandon her son at six months of age and refused to provide any child support during her 12 month enlistment in the military. On March 14, 2006, the family court denied request for child support, citing, that Soldier Sailors act prohibited a soldier from providing child support during deployment.

20. On April 11th 2006, Judge Warner, issued an order prohibiting Mr. Tompkins from participating in a CID criminal investigation, therefore, limiting the plaintiff's right under the first (1) amendment to the U.S. Constitution. (**Exh. F**) as a witness in a criminal investigation outside the family courts jurisdiction..

21. On July 29th 2005, The plaintiff was falsely arrested again by Audra Beasley, This arrest was in violation of the of the plaintiff's 13th and 14th amendment rights, to deprive the plaintiff of this parental rights, Ms Beasley was acting in concert as a co-conspirator, with Ms. Larry tactically. These individuals acted with malice and intent to falsely incarcerate the plaintiff under false domestic violence charges, to allow state official to create a non-criminal data. On November 4th 2005, The Plaintiff was cleared of all domestic violence charges. The above Juvenile official are using currently using and disseminating non-public information to there friend and state judicial offices to create a first impression of Mr. Tompkins as being criminal.

22. On August 4, 2004, Ms. Beasley falsely misrepresented to the Family in case No CS-93-1129 seeking a increase in child support for day care expenses, while not working, alleging that the Mr. Tompkins' monthly salary and rental income ranging

from $4100.00 to $6,200.0 a month, **Exhibits C and D** was introduced as exhibits before Judge Paul Hiebel (Referee) on August 31, 2005 and based upon the false and misleading representation to the Family Court of Montgomery, Judge Hiebel discriminated against the plaintiff, with animus intent and entered an order compelling the plaintiff to pay $1000.00 a month in child support. Mr. Tompkins timely appealed the referees decision before Judge Patricia Warner, whereas, Judge Patricia Warner, racially discriminated against the because he is a black male.

23. On May 25th 2005 Judge Patricia Warner ordered Mr. Tompkins to pay the $1000.0 in child support and day care expense without the court taking actions to determine the Tompkins' ability to pay, therefore, resulting in bankruptcy counseling and the family court entering a A.R.C.P. rule 70, to institution involuntary sale of plaintiff's property.( code of Alabama Section 30-3-1). Judge Warner acted with animus intent, to purposefully deprive the Plaintiff of his federal protected constitutional rights under the 14th Amendment, to due process of the law. Title 42 U.S.C. Section 1983 and 1985.

24. The Family Court Judge Patricia Warner, in this matter had denied the plaintiff the right to complete discovery or submit federal and state income tax returns. On Feb 24th 2006, the plaintiff denied all rental income claims and his discovery requests was denied. Judge Warner, further indicated that she was aware that the plaintiff had property and rental income, again that plaintiff request to submit income tax returns were denied. Judge Warner knowingly with animus intent engaged in Ex Parte communication, to retaliate against Mr. Tompkins and deprive him of his rights protected under the 14th amendment to the U.S. Constitution.

25. Mr. Tompkins was represented by attorney Diane Paris, whom is Judge Warner's law partner. Judge Warner further advanced her role as co-conspirator by appointing Mr. Tompkins former attorney Adler Rothschild in this matter, to represent Ms. Batty Barker in gaining custody of the Mr. Tompkins' son, Ms. Barker is not related by blood or marriage. 42 U.S..C. 1983 and 1985.

26. Judge Warner had engaged in Ex Parte communication to conspire with the parties to force the plaintiff into bankruptcy and foreclosure proceeding to acquire his home and real estate located in Pike Road and Montgomery, Alabama. Title 42 U.S.C. 1983 and section 1985

27. Ms. Beasley, alleges that she is unemployed in **Exhibit E, and in Exhibits C and D** she alleges that she spends $1083.00 in work related child care cost.

28. As a result of the above mention acts in paragraph 9-20, each of the above name defendants acted with animus intent, knowingly and willfully acted to conspire with each other to harm and cause harm to the plaintiff and deprive of his property by using state child support laws to deprive the plaintiff of constitutional rights because he is black and a member of class represented as being and label as a "Dead Beat Dad".

COUNT II

COUNT II

29. Paragraphs 9-28 is herein, adopted and incorporated.

30. On April 11th 2006, **Attorney Juliana Taylor**, Misrepresented material facts to the Family Court, while acting under the color of law (42 U.S.C. Section 1983), On April 10th 2006, Mr. Tompkins filed a petition to enforce provisions of a restraining order against Ms. Larry for coming on his job harassing him.

31. Ms. Taylor purposefully and intentionally, asserted that Mr. Tompkins' child was at risk of harm and requested that Mr. Tompkins' son be placed in the care of **Ms. Betty Barker** (non-relative) and the child's mother. This was discovered when Mr. Tompkins had received Ms. Barkers Petition for custody of Mr. Tompkins son.

32. Ms. Barker indicated in her petition that Judge Warner had removed Mr.Tompkins' son from his custody. Mr. Tompkins was placed under custodial arrest for suing Judge Warner, in retaliation Judge Warner removed Mr. Tompkins son from his custody in violation of his 14th Amendment rights to due Process of law under the U.S. constitution. 42 U.S.C. 1983, 1985(3), and 1986.

33. The family Court, Judge Warner appointed Mr. Tompkins' attorney Alder Rothschild (Exh.U) to represent Ms. Barker in a hearing without Mr. Tompkins being present or having legal representation. In violation of Mr. Tompkins rights under the 6th and 14th amendment to the U.S. Constitution. Additionally, Judge Warner's law partner represented Mr. Tompkins in the same case.

34. Mr. Barker was awarded custody of Mr. Tompkins' son in violation of his procedural due process right, Ms. Barker acted Animo revocandi (animus) to revoke Mr. Tompkins' parental rights. In that, on April 11th 2006, Ms. Barker was ordered to allow Mr. Tompkins visitation of his son, Ms. Barker intentionally denied and interfered with Mr. Tompkins visitation to his biological son without justification. Ms. Barker willingly acted as a co-conspirator to assist her co-defendants in depriving Mr. Tompkins of his constitutional protected rights under the 6th, 13th and 14th amendment rights to the U.S. Constitution.

35. On May 1st 2006, Ms. Betty Barker and defendant Audra Beasley called a local radio talk show falsely alleging that "Mr. Tompkins was fired from his job", "a child molester", the defendants acted with animus in slandering the plaintiff's good name and reputation in support Judge Patricia Warner ruling in their favor.

36. The Defendants knew that their words spoken about plaintiff were false, malicious and can not be supported by facts.

**COUNT III**

37. Paragraphs 9-36 is herein, adopted and incorporated.

38. The Montgomery County Youth Facility, is the recipient of federal funds, Mr. Tompkins is assigned to the Youth Facility as a teacher and coach with the Montgomery County Public Schools. The Youth Facility receives funding for sum 6 to 8 hundred students per year, under Title VI, Title IX and section 504 of the Rehabilitation act of 1973 and section 501.

39. Mr. Tompkins have been barred from participating in educational activities as a teacher by Judge Patricia Warner and Court Administrator Bruce Howard. (Exh. V).

40. Judge Patricia Warner and Bruce Howard, simply did not like the fact that I (Mr. Tompkins) openly exercised my rights to free speech, In expressing my concerns about how Judge Warner had removed my (Mr. Tompkins') son from my care and place the child in the care of a non-family member, whom is a known drug user and lives and depends on this government for housing and living assistance.

41. My (Mr. Tompkins') son is currently living in Gibbs Village, a local housing project, that is a high crime area, that has a high rate of drugs use, alcohol, killing and sexual abuse among its tenants. This act of placing my (Mr. Tompkins') son in such sub-standard living conditions as to harass and racially intimidate Mr. Tompkins for speak out publicly about Judge Warner's unethical conduct.

42. Judge Patricia Warner and Court Administrator Bruce Howard acted with malice and racial intent to damage and harm the plaintiff's reputation by disseminating and posting flyers in the family court falsely accusing me (Mr. Tompkins) of making threats at Judge Warner on a local talk show.

43. Mr. Bruce Howard and Judge Warner, knew that their actions would damage and did damage the plaintiff's good name and reputation in the work place and the community. Judge Warner is an elected official whom allowed office and position to be used for

44. Judge Warner and Court Administrator Bruce Howard, in retaliation for Mr. Tompkins suing Judge Warner, posted " **BE ON THE LOOKOUT**" signs with three picture of Mr. Tompkins, barring him form the Youth Facility as a teacher participating in a federally funded program. After the April 11th 2006, judicial summon of Judge Warner in **Tompkins vs Judge Jones**. Mr. Tompkins is clearly being discriminated against because he is a person of color suing a white female.

### COUNT IV

45. Paragraphs 9-44 is herein, adopted and incorporated.

46. **THE CITY OF MONTGOMERY ( herein referred to as THE CITY)**, on or about January 2002, THE CITY secured a debt in the amount $65,000 in federal

funds and State funds to the Centennial Hill Gardening Project (CHGP) under the oversight of Donald Jenkins and Ed Slatery. The CHGP is a non-profit organization that advocates community renovation of homes. These funds allowed Mr. Jenkins to purchase the MORRIS HOUSE.

47. From 2002 to the present CHGP have received federal funds at The City's pleasure to improve and assist individuals in renovating houses in the community. The CITY and CHGP have targeted black investors and real estate owners in the Centennial Hill area and used municipal laws to demolish the black owners properties without due process of law or compensation ( **SEE Exhibits J,K,L,M and N).**

48. THE CITY, in enforcing its housing codes, have allowed City Council Members to purchase property from property owners whom various council members have voted to condemn. In the vary same instance City Council Members have support defendants in this case to deny and denied Mr. Tompkins the right to benefits from the use of federal funds while a citizen and resident of Montgomery, Alabama.

49. Mr. Tompkins and his family, formerly owned property listed in exhibits **O,P,Q,R, S and T,** The CITY and CITY COUNCIL MEMBERS have been informed at numerous council meeting that Mr. Tompkins no longer owed the above properties. THE CITY has refused to stop billing Mr. Tompkins or stop accessing liens against his estate. THE CITY action are intentionally and purposely to impose cost and liens against Mr. Tompkins to acquire a financial interest in his property. Because he is a black property owner in the Centennial Hill Area, therefore, these acts are in violation of Mr. Tompkins rights to due process of law under the 14th Amendment to the U.S. Constitution. See title 42 U.S.C. section 1983,1985 and 42 U.S.C. 2000(d)(1)(7) and 20 U.S.C.1681 of the 1964 Civil Rights Act.

WHEREFORE, Plaintiff prays for the following relief:

1. That a temporary and permanent injunction be issued restraining the defendants, their agents, employees, attorneys and all others acting in concert with them from instituting frivolous claims against Mr. Tompkins estate.

2. Declare that the Plaintiff rights to due process were violated by the illegally constituted acts and prohibit the family Court Judge Pat Warner and Court Administrator Bruce Howard from depriving Mr. Tompkins of his constitutional protective rights while participating in a federally funded program.

3. And declare that he plaintiff's right s to due process were violated by the intentional acts committed by the named defendants, while acting with **animus intent.**

4. The plaintiff is entitled to an award of treble damages.

5. Direct the United States Government ( FBI), Montgomery County Sheriffs, Alabama Bureau of Investigation (ABI) to expunge any and all non-conviction in their data

base relating to Mr. Tompkins as being in violation of his fourth (4th) amendment rights to unreasonable searches. Title 28 U.S.C.1361 and fourteenth (14th) amendment.

6. And impose punitive damages in the amount $250,000.00 against each name defendant and injunctive relief against Judge Warner, The City of Montgomery, Judge John Jones, and the U.S. Army and enjoining them from performing future acts violate the plaintiff rights secured under the U.S. Constitution.

7. Plaintiff reserves the right to amend complaint to laws violated and to add other unknown defendants.

RESPECTFULLY SUBMITTED,

*[signature]*

JESSIE TOMPKINS SR.
13180 U.S. Hwy 80 East
PIKE ROAD, ALABAMA 36064
334-277-8859 Hm.

EXHIBITS
A,B,C,D,E,F,G,H,I,J,K,L,M,N,O,P,Q,R,S,T,U,V,W,X

Certificate of Service

I Jessie Tompkins hereby certify that I have served a copy of the amended complaint on all parties of record on this 5th day of 2006

*[signature]*
Jessie Tompkin

TITLE 42 - THE PUBLIC HEALTH AND WELFARE
CHAPTER 21 - CIVIL RIGHTS
SUBCHAPTER V - FEDERALLY ASSISTED PROGRAMS

**Sec. 2000d-7. Civil rights remedies equalization**

STATUTE:

(a) General provision

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

(b) Effective date

The provisions of subsection (a) of this section shall take effect with respect to violations that occur in whole or in part after October 21, 1986.

Source: US HOUSE REP (1/2001)



```
CITE        42 USC Sec. 2000d                                          01/06/97
EXPCITE     TITLE 42 - THE PUBLIC HEALTH AND WELFARE
            CHAPTER 21 - CIVIL RIGHTS
            SUBCHAPTER V - FEDERALLY ASSISTED PROGRAMS
TEXT        Sec. 2000d. Prohibition against exclusion from participation in,
                denial of benefits of, and discrimination under federally
                assisted programs on ground of race, color, or national origin
              No person in the United States shall, on the ground of race,
            color, or national origin, be excluded from participation in, be
            denied the benefits of, or be subjected to discrimination under any
            program or activity receiving Federal financial assistance.
SOURCE      (Pub. L. 88-352, title VI, Sec. 601, July 2, 1964, 78 Stat. 252.)
NOTES            COORDINATION OF IMPLEMENTATION AND ENFORCEMENT OF PROVISIONS
              For provisions relating to the coordination of implementation and
            enforcement of the provisions of this subchapter by the Attorney
            General, see section 1-201 of Ex. Ord. No. 12250, Nov. 2, 1980, 45
            F.R. 72995, set out as a note under section 2000d-1 of this title.
SECREF               SECTION REFERRED TO IN OTHER SECTIONS
              This section is referred to in section 2000d-1 of this title;
            title 39 section 410.


CITE        42 USC Sec. 2000d-1                                        01/06/97
EXPCITE     TITLE 42 - THE PUBLIC HEALTH AND WELFARE
            CHAPTER 21 - CIVIL RIGHTS
            SUBCHAPTER V - FEDERALLY ASSISTED PROGRAMS
TEXT        Sec. 2000d-1. Federal authority and financial assistance to
                programs or activities by way of grant, loan, or contract other
                than contract of insurance or guaranty; rules and regulations;
                approval by President; compliance with requirements; reports to
                Congressional committees; effective date of administrative
                action
              Each Federal department and agency which is empowered to extend
            Federal financial assistance to any program or activity, by way of
            grant, loan, or contract other than a contract of insurance or
            guaranty, is authorized and directed to effectuate the provisions
            of section 2000d of this title with respect to such program or
            activity by issuing rules, regulations, or orders of general
            applicability which shall be consistent with achievement of the
            objectives of the statute authorizing the financial assistance in
            connection with which the action is taken. No such rule,
            regulation, or order shall become effective unless and until
            approved by the President. Compliance with any requirement adopted
            pursuant to this section may be effected (1) by the termination of
```